William BAIRD, et al., Plaintiffs,
Appellees,

v.

Francis X. BELLOTTI, et al.,
Defendants, Appellees.

Planned Parenthood League of Massachusetts, Plaintiffs-Intervenors,
Appellants.

William BAIRD, et al., Plaintiffs,
Appellants,

v.

Francis X. BELLOTTI, et al.,
Defendants, Appellees.

Nos. 83–1167, 83–1315 and 83–1350.

United States Court of Appeals,
First Circuit.

Argued Sept. 15, 1983.
Decided Jan. 13, 1984.

John Henn, with whom Sandra L. Lynch, and Foley, Hoag & Eliot, Boston, Mass., were on brief, for Planned Parenthood League of Massachusetts.

Earle C. Cooley, with whom Hale & Dorr, Joseph J. Balliro, Boston, Mass., Roy Lucas, Washington, D.C., Joan C. Schmidt, and Law Offices of F. Lee Bailey, Boston, Mass., were on brief, for William Baird et al.

Judith S. Yogman, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Francis X. Bellotti et al.

Before CAMPBELL, Chief Judge, SKELTON,* Senior Circuit Judge, and BREYER, Circuit Judge.

---

* Of the Federal Circuit, sitting by designation.

1. The district court made the perceptive observation that there exists a difference between the application of laches to bar the bringing of

**LEVIN H. CAMPBELL, Chief Judge.**

■ Planned Parenthood League of Massachusetts (PPLM) was an intervening plaintiff, and William Baird was an original plaintiff, in protracted civil rights litigation which was commenced in 1974. They were almost entirely successful throughout, and they won the final round on July 2, 1979, when the Supreme Court ruled 8–1 in their favor. *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). On October 1, 1979, the Supreme Court denied rehearing, 444 U.S. 887. Eight months later, on May 29, 1980, PPLM filed its motion for attorneys' fees under 42 U.S.C. § 1988 in the district court; and 30 months later, Baird filed his motion for attorneys' fees. Defendants thereafter sought dismissal of both motions on grounds of laches, and the district court granted dismissal after hearing. This appeal followed.

The district court, Senior Circuit Judge Aldrich, sitting by designation, set out findings and rulings at length in *Baird v. Bellotti,* 555 F.Supp. 579 (1982), which we do not repeat but which provide a necessary background to this opinion.

The basic issue on appeal is whether the district court abused its discretion in denying the fees. This in turn depends on whether Baird's and PPLM's lengthy delays in moving for fees caused sufficient prejudice to warrant the court's denying them. In *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 454, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982) (*White*), the Court indicated that section 1988's authorization to award fees "in [the] discretion" of the court "will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party." The delays in the present case of eight and thirty months were plainly unreasonable. But as the district court said, "[t]he concept of laches is that a party is to be forgiven his unreasonable delay, provided it has had no prejudicial consequences." 555 F.Supp. at 585.[1]

a cause of action (the usual case) and the application of laches to support a denial of attorneys' fees. A fees request "although separate, is collateral to, and closely connected with, judicial proceedings that have otherwise

While fees under section 1988 are expressly a matter for the district court's discretion, and while ordinary principles of laches may be somewhat tempered, *see* note 1, the Supreme Court's reference in *White* to "unfair surprise" and "prejudice" indicates that prejudice remains a significant factor. *Compare Fulps v. City of Springfield,* 715 F.2d 1088 (6th Cir.1983) (affirming finding that eight-month delay in requesting fees was "patently untimely" but remanding for determination of actual prejudice).

In the present case, after discussing a number of prejudicial factors created by the delays, the court found as to Baird's request "a strong probability of prejudice" and as to PPLM's "a probability of substantial prejudice." It went on to ask "whether this advance finding can be sufficient, or whether the court must "conduct a necessarily elaborate fee hearing, and then determine whether, in fact, there was prejudice." 555 F.Supp. at 589. Answering its own question, the court rejected a further proceeding, reasoning

> a party guilty of an unexcused substantial delay should not be entitled to impose that great burden, and in this instance the court [would impose] the burden on itself and other litigants as well as . . . on the defendant.

*Id.* The question, therefore, is whether the prejudicing factors found by the district court were sufficient to warrant its decision to deny fees. To answer, we shall consider each applicant's situation separately.

### a. *William Baird*

■ The fees claimed by Baird's attorneys were for services from 1974 onward, involving about $250,000. The district court pointed out that the burden of establishing excessiveness, or countervailing, or negative aspects, of a plaintiff's "lodestar" figure is normally on the defendant. And the judge is required to make very specific analysis and findings if he departs from the plaintiff's lodestar. 555 F.Supp. at 586. It

terminated . . . . The advantages of a continuum, and the loss from interruption, differ from laches in the bringing of a cause of action." 555 F.Supp. at 586. For this reason, the dis-

follows that loss of witnesses or their memories, or loss of the judge's own memory, is likely to be particularly harmful to the defendant. The district court thus took quite seriously the Attorney General's assertion that,

> during [Baird's] delay, his last knowledgeable assistant had, indeed, left, very possibly diminishing the interest and perhaps availability, of departed employees with respect to affording sufficient time for reviewing files and refreshing recollections . . . .

555 F.Supp. 586. The departed assistant was Garrick Cole. In an affidavit, Cole stated that his present position as an associate at a private law firm "requires a complete commitment of my professional time. As a result it would be somewhat difficult and burdensome for me to assist the Department of the Attorney General in opposing plaintiffs' and plaintiffs-intervenors' fee applications . . . ."

Cole had worked on the underlying case from September of 1975 to August of 1980, and it appears that he had the longest exposure to, and the best overall picture of, the litigation. Had Baird moved for a fee several months after denial of rehearing in October 1979, Cole would have been available to render full assistance to the Commonwealth. Given the amount claimed, the variety of services covered, and the complexity and duration of the litigation, we think Cole's presence was key. Although he remains in Boston, and can presumably be specially engaged by the Attorney General, the court could properly find that his availability will be more circumscribed than when he was the Attorney General's employee, to the prejudice of the Commonwealth.

Though Cole does not assert any memory loss, other former Assistant Attorneys General do. For example, Stephen Rosenfeld, who worked on the case from 1975 to 1977, and left the Attorney General's office in

trict court felt that prejudice should arise more quickly in fees applications than in the more usual case. We agree.

August of 1979, calls his recollections of the nature, quality, and amount of services rendered by opposing counsel "extremely limited," as does Michael Meyer, who worked on the case from May 1977 to February 1979. Meyer left in October of 1979. While Meyer and Rosenfeld had left before the Supreme Court denied rehearing on October 1, 1979, the district court could properly determine that their recollections and those of other assistants would have been better if the hearing had been held in the winter or spring of 1980, as would have happened had a timely motion been filed.

■ Baird downplayed the departure of the assistants, arguing that it is for the court to evaluate the reasonableness of the fees requested. Having participated in most of the proceedings for which fees were sought, the district judge agreed that his own estimate of the value of the services was of importance, but pointed out that in at least one instance where he had "reservations" about the quality of Baird's representation, he could no longer recall the specifics. Considering only prejudice to the defendant, not prejudice to the judiciary,[2] the court observed that it would be to "defendant's cost" were it to fail to remember "events or circumstances rebutting or diminishing any of plaintiffs' claims, which they assert to be prima facie until discounted." 555 F.Supp. at 587. We agree that loss of a participating judge's memory is another element of prejudice in a situation such as this.

Baird argues that he should not be charged with a 30-month delay because af-ter our decision in *White v. New Hampshire Department of Employment Security,* 629 F.2d 697 (1980) (*White I*), came down in August 1980 (holding that attorneys' fees requests must be filed within ten days), it would have been futile for him to have filed his motion until our decision was reversed by the Supreme Court. That argument fails on two counts.

First, as the district court pointed out, issuance of *White I* in August 1980, would not have held up Baird's fees claim had Baird proceeded with reasonable dispatch during the preceding period, since, had he done so, the fee issue would have been heard and resolved before August 1980. Baird first learned of his victory when the Supreme Court's decision came down on July 2, 1979. He could have started putting together a fee motion immediately thereafter. Especially in light of this, the district court felt that it was reasonable to have expected him to move for a fee within 60 days after the October 1, 1979, denial of rehearing. Had he done so—indeed, had he moved within even twice or treble that time[3]—his motion would have been heard and doubtless decided before our decision in *White I* came down. We think, therefore, that the further delay, and any prejudice therefrom, resulting from *White I* can be laid at Baird's own doorstep.

Second, even if we were to count against Baird only the delay from October 1, 1979 until August 1980, when *White I* came down, the consequences were sufficiently prejudicial to justify denial of fees in a matter of this complexity. Cole left the

---

**2.** While prejudice to the party from whom fees are sought is of primary significance, prejudice to the judiciary is also material. Courts today are seriously congested. It is unfair to other litigants if memories diminished by unfounded delay cause longer fees proceedings. This point is related to that made by the district court when it spoke of the harm caused by interruption of the "continuum." *See* note 1, *supra.*

**3.** In determining what time was reasonable, the district court took note of our *White II* decision, 679 F.2d 283 (1982), in which we held that a four-and-one-half month delay, although "considerable," was not so extreme that the court abused its discretion in accepting it. The court below commented, "[i]f, even with special circumstances, four and a half months is 'considerable,' how much more are the delays here, if there were none." 555 F.Supp. at 582.

In *White II,* of course, we began with a district court's prior determination that four-and-one-half months was acceptable in the circumstances. Section 1988 confers primary discretion upon the district court, not this court. The question is not what we ourselves would do but whether the district court acted unreasonably. Here we begin with a district court's determination that a period far longer than four-and-one-half months was *unacceptable.*

Attorney General's office in August of 1980; thus prejudice due to his absence was complete by the end of the ten months. Some prejudice can also be inferred from the normal erosion of memories over the ten-month period. In Baird's case, unlike PPLM's, the services to be evaluated went back to 1974 and they included both trial and appellate activities. Baird, moreover, had switched counsel in midstream, requiring inquiry into whether work done by new counsel needlessly duplicated that of old counsel. *See King v. Greenblatt,* 560 F.2d 1024 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). While the defendant's and the court's task of reconstruction would have been hard enough had a timely motion been filed, a delay of this order plainly added to their difficulties.

█ We therefore hold that the district court was within its discretion in finding that the prejudicial elements with respect to Baird's fee request created "a strong probability of prejudice." The factors it enumerated, when coupled with the extraordinary, unjustified length of the delay,[4] constitute a level of actual prejudice sufficient to meet the Supreme Court's standard for the denial of attorneys' fees under 42 U.S.C. § 1988. *White,* 455 U.S. 445, 454, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1981). Bearing in mind that the district court, not ourselves, retains primary discretion in these matters, we see no basis to reverse its denial of fees to Baird.

b. *PPLM*

█ PPLM's lesser eight-month delay was also, as we have said, unreasonable.

Additionally, it was unjustified—counsel was simply too busy to be bothered.

However, we do not agree with the district court that PPLM's delay was shown to have been prejudicial. We distinguish between Baird and PPLM primarily because the work for which PPLM's attorneys sought compensation is so much more easily appraisable. We are *not* persuaded that the eight months that went by made it significantly more difficult for the district court to appraise, or the defendant to challenge, the services said to have been performed. The services in Baird related to a number of complex trial and appellate proceedings over a five-year period, but PPLM's work consisted of arguing and briefing a single case in the Supreme Court, namely *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), argued in February 1979.[5] The district court's own memory of counsel's performance is not involved.

While recognizing this, the district court felt that the passage of time had created prejudice—at least to the extent that a longer fees hearing might be required. With all respect, we think there is insufficient support for such an inference.

The district court mentioned a number of facts from which it derived prejudice: First, the number of hours claimed, 880, is so great as to be "entirely foreign to the court's experience." 555 F.Supp. at 588. This means, it said, that "unusual scrutiny" is called for, a requirement which the passage of time makes more onerous. *Id.* Second, and related, is the issue of possibly unnecessary duplication within counsel's law firm, i.e., the affidavit lists four people

---

**4.** The 30 months in Baird's case comes close to a delay so long that courts might infer prejudice simply from its length, without more. (Baird's 30-month delay was nearly four times longer than PPLM's.) *See* note 1, *supra. Compare* McClintock, *Equity* § 28 (2d ed. 1948) (absent prejudice, a long delay does not amount to laches) *with* Walsh, *Equity* § 102 (1930) (a delay, if very extended, can establish laches absent a showing of prejudice) *and* Clark, *Equity* § 31 (1954) (no hard and fast rules as to what amounts to laches); *see generally* Re, *Remedies* at 527 & n. 59 (1982). We need not, however, decide this point as there

was adequate extrinsic indication of actual prejudice.

**5.** The district court described the work as follows:

> Not only were the services relatively more recent, but they were confined to resisting defendant's second appeal, viz., a motion and brief to affirm, a principal brief, obtaining leave to argue orally, and appellate argument, and were thus of a type simpler, and more easily appraisable, than Baird's totality.

spending 80 or more hours apiece, and 118 apparently interoffice conferences. Third, the court questioned whether much of the brief and argument had not already been foreshadowed in prior lower court opinions—to the point that much of counsel's time charges reflected a mere gilding of the lily. "[A]t some point, fairness and diminishing returns dictate that charges be not further run up against an opponent." Finally, the court noted that Garrick Cole had left the Attorney General's office in the summer of 1980. Had the fees request been filed within two or four months from October 1, 1979, Cole would have been fully available and, of course, the matter would have been wrapped up before our decision in *White I,* which came down in August 1980 (with the practical effect of putting fees matters on ice until the Supreme Court reviewed the question).

Although we regard some of the above factors as prejudicial with respect to Baird's claim, which related to multiple proceedings over five years, we find their prejudicial effect on PPLM's to be far less obvious. We do not see how the passage of time could much affect the court's ability to determine whether counsel's work was duplicative or unnecessary. For example, comparison of counsel's Supreme Court brief with the prior opinions of the three-judge district court would suffice to indicate how much duplication was involved there. To be sure, Cole's presence will help the defendant, but Cole is practicing with a Boston firm, and for a one-shot matter like this, as contrasted with Baird's five-year litany, he seems sufficiently available. While the passage of time will have blunted the district court's recollection, it is hard to see how recollection has much bearing in deciding whether the brief and arguments in the Supreme Court were worth 880 hours or only one-third of that. Even by the fall of 1979, the court had been away from the

case for over a year. Moreover, in the unlikely event an item should arise as to which forgetfulness or absent witnesses due to delay are a real factor, the court's discretion under section 1988 is broad enough to permit it to disallow the item without prolonged inquiry.

In sum, given a fee claim where the basic issue is to evaluate services relative to a single appellate brief and argument, we are unable to see that PPLM's delay, albeit excessive, caused sufficient prejudice to deny any fee at all. We therefore vacate the court's denial of PPLM's fees request, and remand to the district court with directions that it establish the amount of, and award, that fee. We repeat that the court's discretion on remand includes the right to reduce the fee by whatever amount, if any, it finds proper to protect the defendant (or the court itself) against possible adverse consequences attributable to plaintiff's original unreasonable delay should the court, on remand, actually identify such.

■ It might be questioned why Baird's fees request should not be similarly treated. The answer to this, as already indicated, is that material prejudice was shown in his case, based on the length and complexity of the services to be evaluated. When unreasonable delay is coupled with a demonstrated likelihood of actual prejudice, the district court is fully warranted in denying a fee altogether. *See White,* 455 U.S. at 454, 102 S.Ct. at 1167.

The time and effort expended by two courts on this matter leads us to repeat our earlier suggestion made in *White II,* 679 F.2d at 285, that the district courts in this circuit adopt a local rule, as approved by the Supreme Court in *White,* 455 U.S. at 454, 102 S.Ct. at 1167, fixing a definite time within which fees requests must be filed. A rule will prevent recurrence of cases of this nature.[6]

---

**6.** In *White II* we recommended adoption of a local rule requiring a fee request to be filed within 21 days after judgment. Twenty-one days was the period mentioned in an Eighth Circuit decision cited by the Supreme Court in *White.*

Upon rethinking, we are now inclined to recommend that a local rule contain a longer period, such as 45 or 60 days. This longer period will give all parties time to learn whether an appeal has been filed—and, if so, to move to extend the period for requesting a fee until

We affirm as to Baird's fees request, and vacate and remand as to PPLM's.

*So ordered.*

some specified time after the appeal is resolved. The difficulty most often mentioned in a hard-and-fast local rule is that the party who prevails in the district court may not continue to prevail on appeal, thus losing entitlement to a fee. This problem can be met in various ways, one of which would be to draft the rule to provide that a fee request must be filed within 45 or 60 days following entry of judgment *unless,* upon motion filed within such period, the court for good cause shown extends the time for filing the fee request. (If post-judgment motions are filed, the local rule might also want to defer the running of the 45 or 60 days until the motions are decided, *see* Fed.R. App.P. 4(a)(4).)

Where a local rule is promulgated, this court will strongly support an insistence upon its strict observance.