**BIONIC AUTO PARTS & SALES, INC., et al., Plaintiffs,**

v.

**Tyrone L. FAHNER, et al., Defendants.**

**No. 80 C 3696.**

United States District Court,
N.D. Illinois, E.D.

July 10, 1984.

G. Flint Taylor, Jr., Sherman C. Magidson, Glenn E. Gutsche, Mark W. Solock, Carl P. Clavelli, Patrick G. Reardon, Chicago, Ill., for plaintiffs.

James D. Montgomery, Corp. Counsel of City of Chicago, Thomas G. Morrissey, Asst. Corp. Counsel, Richard M. Daley, State's Atty. of Cook County, David S. Allen, Asst. State's Atty., William F. Dicks, Jr., Sp. Asst. State's Atty., Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

Bionic Auto Parts & Sales, Inc. and other similarly situated plaintiffs originally sued the Illinois Attorney General, the Illinois

---

Secretary of State, the Cook County State's Attorney and the Chicago Superintendent of Police ("Superintendent") under 42 U.S.C. § 1983, seeking injunctive and declaratory relief against enforcement of the Illinois Vehicle Code, Ill.Rev.Stat. ch. 95½ (the "Code") and Rule 5–401A promulgated under the Code. This Court on July 6, 1981 granted a preliminary injunction, 518 F.Supp. 582, and on December 28, 1981 entered its final order permanently enjoining defendants from enforcing Code § 5–401(e) and Paragraphs 1.G and 5 of Rule 5–401A.[1]

While the case was on appeal, the Illinois General Assembly passed Public Law 82–984, which restricted searches previously allowed by the Code. Consequently our Court of Appeals vacated most aspects of the injunction. It did however uphold the injunction as to Rule 5–401A ¶ 1.G in its application to sole proprietorships.[2] 721 F.2d 1072 (7th Cir.1983).

On March 7, 1984 plaintiffs filed their 42 U.S.C. § 1988 ("Section 1988") petition for attorneys' fees and expenses, covering work done both here and in the Court of Appeals. Defendants resisted any such award, contending:

1. Plaintiffs and defendants had jointly agreed to waive all attorneys' fees and expenses.

2. Plaintiffs were not "prevailing parties."

After a hearing on the first issue, this Court found no agreement had been entered into. It then asked the parties to address the timeliness of plaintiffs' petition.[3] For the reasons stated in this memorandum opinion and order, this Court finds plaintiffs' petition timely.

*White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) held the stringent ten-day timetable of Fed.R. Civ.P. ("Rule") 59(e) did not govern Section 1988 fee applications. It then went on to say (*id.* at 454, 102 S.Ct. at 1167, footnotes omitted):

> Section 1988 authorizes the award of attorney's fees "in [the] discretion" of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party. Moreover, the district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees. And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits.

And shortly after *White* our Court of Appeals put the matter this way in *Gautreaux v. CHA*, 690 F.2d 601, 612 (7th Cir.1982) (citations omitted):

> Absent a fixed time limitation, the only constraint on when the plaintiffs file for attorneys' fees under Rule 54(d) of the Federal Rules is laches.... A laches claim must demonstrate both undue de-

1. That relief was based on two holdings:

(a) Code § 5–401(e) violated the Fourth Amendment because it permitted warrantless searches at any time of day or night without any check on the government agency's discretion. 518 F.Supp. at 585.

(b) Rule 5–401A ¶ 1.G violated the Fifth Amendment by requiring the licensee to report any altered vehicle identification numbers. Because Code § 4–102(a)(4) makes it a misdemeanor to possess goods with altered numbers even if the licensee had no knowledge of the alteration, the licensee's own statement would subject him to criminal prosecution. 518 F.Supp. at 587.

2. As to the same Rule's applicability to partnerships, the Court of Appeals remanded for findings on whether the Fifth Amendment privilege applies to the partnerships involved in this case. When this Court sought to schedule a post-remand hearing for that purpose, the Attorney General advised such a hearing would likely be unnecessary because it was anticipated the reporting requirement would be eliminated for *all* licensees (individuals, partnerships *and* corporations).

3. Only plaintiffs and Superintendent have filed memoranda on the subject.

lay and prejudice to the non-delaying party.

Here Superintendent claims "unfair [ ] surprise [ ] or prejudice [ ]" (the language in *White*) because plaintiffs' late filing:

> (a) makes it more difficult to challenge plaintiffs' billing hours for work done in 1980–81 and
>
> (b) imposes an added strain on City's budgetary process.

In the absence of a local rule as suggested in *White*,[4] some few recent reported decisions have dealt with fee petitions filed after appellate remand and dealing with all the work done in the case, including services at the initial district court level. In such cases courts have treated the relevant time period as running from the date of the decision on appeal (*Baird v. Bellotti,* 724 F.2d 1032, 1034–35 (1st Cir.1984); *Brown v. City of Palmetto, Georgia,* 681 F.2d 1325, 1326–27 (11th Cir.1982)) or from the date of the district court's judgment after remand (*White* itself, 629 F.2d 697, 698–99 (1st Cir.1980) (application held timely upon remand from Supreme Court, 679 F.2d 283, 285 (1st Cir.1982)); *cf. Inmates of Allegheny County Jail v. Pierce,* 716 F.2d 177, 179 (3d Cir.1983)). Even before *White* our Court of Appeals had allowed a post-remand application for fees covering time the plaintiffs spent in obtaining the initial district court decision. See summary in *Bond v. Stanton,* 630 F.2d 1231, 1232 (7th Cir. 1980).[5]

Nor do considerations of judicial economy necessarily compel a filing for fees promptly after final judgment. True enough, if a plaintiff does make such a filing, an appeal from the district court's ruling on fees can likely be consolidated with the appeal on the merits. But that does not assure only a single appeal. If the plaintiff's victory on the merits is upheld on appeal in whole or part, the district court would then have to consider the inevitable fees application for work done in the appellate court—with the potential for a second appeal from that decision.

Conversely, if the plaintiff waits until after the appellate court decision on the merits to apply for fees for work done in both the district and appellate courts, the district court renders a single opinion on fees. Again there are two potential appeals—this time one on the merits alone, the other on fees alone. Moreover, under this scenario a partial or total appellate reversal on the merits will change the shape of, or eliminate entirely, any fees determination by the district court. See generally discussion in *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 827 (7th Cir.1984); and as to the possible diminution of fee awards where a plaintiff has been less than fully successful, see *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983).[6]

Under the circumstances this Court is constrained to hold the reasonable time limitation for plaintiffs' fees petition can reasonably be viewed from the time of remand from the Court of Appeals. In fact the petition here was filed just 2½ months after that date.[7] To reject plaintiffs' petition as untimely, this Court must find defendants have shown unfair surprise or prejudice resulting from a really nonexistent delay (or at worst the minor delay adverted to in n. 7).

---

**4.** This District Court's General Rule 46 now calls for fees petitions to be filed within 90 days of entry of the final judgment. That rule however was not adopted until well after the entry of judgment in this case.

**5.** Plaintiffs correctly point out the standard for reasonableness of their decision to defer filing their fees petition (until the appeal on the merits had been resolved) should be the state of the law in December 1981 (the date of this Court's final judgment on the merits). At that time *Bond* was current authority.

**6.** This point too had been made by our Court of Appeals not long before final judgment in this case. *Muscare v. Quinn,* 614 F.2d 577, 580 (7th Cir.1980).

**7.** Even were the time measured from the Court of Appeals' opinion date rather than the subsequent issuance of the mandate, the petition was filed 6½ months after the initial (later withdrawn) opinion and just 3 months after the ultimate opinion.

Courts applying the *White* standard have inquired into the *actual* prejudice suffered by the affected party due to the late filing. *Baird,* 724 F.2d at 1034. By that test Superintendent's submission is wholly inadequate. There is no showing (as contrasted with a bald assertion) why it is harder to challenge plaintiffs' attorneys' 1980–81 hours now than it would have been a short time ago. Contrast the detailed showing made in *Baird,* 724 F.2d at 1034–37. Nor has Superintendent even attempted a showing as to how the fees application has any more of an adverse effect on the City budget now than it would have had earlier. Superintendent's mere conjecture that lateness must mean prejudice is not enough to deem a fees application untimely, especially given the brevity of the relevant period.[8] See *Baird,* 724 F.2d at 1036 n. 4.

### Conclusion

Plaintiffs' fee application is timely. It is now appropriate for the parties to address the merits of that application:

1. To what extent were plaintiffs "prevailing parties"?

2. Are the claimed hours and hourly rates reasonable?

3. Is there any occasion for application of a multiplier?

As always in the area of fees awards, the potential of fees on fees caused by evidentiary hearings makes it in everyone's interest to seek to narrow the controverted issues by stipulation if possible. This Court will schedule an early status report date to determine what will be needed to resolve the open issues.

8. Indeed Superintendent's position is really unsupported even on a worst-case (and inappropriate) comparison with an assumed application shortly after the December 1981 final judgment date.