**BIONIC AUTO PARTS AND SALES, INC., et al., Plaintiffs-Appellees,**

v.

**Tyrone C. FAHNER, et al., Defendants-Appellants.**

**Nos. 82–1138, 82–1139 and 82–1186.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1982.

Finally Submitted April 4, 1983.

Decided Aug. 23, 1983.

Patricia Rosen, Asst. Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendants-appellants.

Carl P. Clavelli, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, CUDAHY and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge.

The Illinois State Attorney General, along with other public officials,[1] appeals from an injunction entered in the District Court for the Northern District of Illinois, Milton I. Shadur, *District Judge*, prohibiting enforcement of § 5–401(e) of the Illinois Vehicle Code, Ill.Rev.Stat. ch. 95½, § 5–401(e) (1981), and Paragraph 5 of Administrative Rule 5–401A, which authorize warrantless administrative searches of the business premises of automotive parts dealers, scrap processors and parts rebuilders. The district court reasoned that, because the searches authorized by the Illinois legislature left state officials with too much discretion, they could not be conducted without the safeguard of a warrant as required by the Fourth Amendment. The court also held that Paragraph 1G of Administrative Rule 5–401A violated the Fifth Amendment in requiring licensees to record their own violations of related criminal statutes.[2] Following the district court's award of injunctive and declaratory relief,

the state legislature added two new sections to the Vehicle Code relating to warrantless searches. Ill.Rev.Stat. ch. 95½, §§ 5–100–1, 5–403.

We hold that the addition of the two new sections has cured any unconstitutional taint which the Vehicle Code otherwise might have had. We agree with the district court, however, that Paragraph 1G of Rule 5–401A, which was not amended subsequent to the district court's decision, violates the Fifth Amendment at least with respect to some of the appellees as more fully set forth below, and we affirm the district court's judgment as to them. We vacate the injunction in all other respects.

I.

In response to the Fourth Amendment challenge, the district court awarded full injunctive and declaratory relief to appellees by its judgment entered December 28, 1981. The section of the Vehicle Code invalidated, § 5–401(e), reads:

"Every record required to be maintained under this Section shall be open to inspection by the Secretary of State or his authorized representative or any peace officer for inspection at any reasonable time during the night or day. Such inspection may include examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of required records."

The district court held that the broad authorization for warrantless searches in this section of the Code, limited only by the requirement that inspections be "at any reasonable time during the night or day", vested excessive discretion in the state officials.

On January 1, 1983, approximately one month after we heard oral argument in this case, Public Law 82–984 went into effect,

---

* Of the Second Circuit, by designation.

1. Included as appellants are the Secretary of State, the State's Attorney of Cook County, and the Superintendent of the Police Department of Chicago.

2. The Illinois Supreme Court had sustained the constitutionality of Rule 5–401A against a pre-

vious challenge. *Northern Illinois Automobile Wreckers and Rebuilders Ass'n v. Dixon*, 75 Ill.2d 53, 387 N.E.2d 320, *cert. denied*, 444 U.S. 844 (1979). Plaintiffs in that case, including all appellees in the instant case except Bionic, did not raise a Fourth Amendment claim.

adding to the Illinois Vehicle Code § 5–100–1 and § 5–403 which provide as follows:

"Sec. 5–100–1. Findings and Purpose. The General Assembly finds that: (1) crimes involving the theft of motor vehicles and their parts have risen steadily over the past years, with a resulting loss of millions of dollars to the residents of this State; and (2) essential to the criminal enterprise of motor vehicle theft operations is the ability of thieves to transfer or sell stolen vehicles or their parts through legitimate commercial channels making them available for sale to the automotive industry; and (3) motor vehicle dealers, used parts dealers, scrap processors, automotive parts recyclers, and rebuilders are engaged in a type of business which often exposes them and their operations to pressures and influences from motor vehicle thieves; and (4) elements of organized crime are constantly attempting to take control of businesses engaged in the sale and repair of motor vehicles so as to further their own criminal interests; and (5) close and strict government regulation of motor vehicle dealers, used parts dealers, scrap processors, automotive parts recyclers, and rebuilders will significantly reduce the numbers of motor vehicle-related thefts in this State. It is, therefore, the intent of the General Assembly to establish a system of mandatory licensing and record keeping which will prevent or reduce the transfer or sale of stolen motor vehicles or their parts within this State."

"Sec. 5–403. (1) Authorized representatives of the Secretary of State including officers of the Secretary of State's Department of Police, other peace officers, and such other individuals as the Secretary may designate from time to time shall make inspections of individuals and facilities licensed under Chapter 5 of the Illinois Vehicle Code for the purpose of reviewing records required to be maintained under Chapter 5 for accuracy and completeness and reviewing and examining the premises of the licensee's established place of business for the purpose of determining the accuracy of the required records. Premises that may be inspected in order to determine the accuracy of the books and records required to be kept includes all premises used by the licensee to store vehicles and parts that are reflected by the required books and records. . . .

. . . .

(3) The licensee or a representative of the licensee shall be entitled to be present during an inspection conducted pursuant to Chapter 5, however, the presence of the licensee or an authorized representative of the licensee is not a condition precedent to such an inspection.

(4) Inspection conducted pursuant to Chapter 5 may be initiated at any time that business is being conducted or work is being performed, whether or not open to the public or when the licensee or a representative of the licensee, other than a mere custodian or watchman, is present. The fact that a licensee or representative of the licensee leaves the licensed premises after an inspection has been initiated shall not require the termination of the inspection.

(5) Any inspection conducted pursuant to Chapter 5 shall not continue for more than 24 hours after initiation. . . .

. . . .

(7) No more than 6 inspections of a premises may be conducted pursuant to Chapter 5 within any 6 month period except pursuant to a search warrant. . . ."

The legislation neither explicitly repealed nor amended § 5–401(e), the section which was held unconstitutional by the district court below. Apparently, the old statute remains in force, side-by-side with the new one. Appellees therefore invite us first to adjudicate the constitutionality of the old statute. We decline the invitation.

■ While not expressly so stated, we believe that new § 5–403 unquestionably places limits on the frequency and duration of the searches authorized in old § 5–401(e). For example, § 5–403(4) provides that

searches be conducted only during the dealer's normal business hours, and § 5–403(7) places a cap of six searches without a warrant during any six-month period. The new provision in essence circumscribes the open-ended authorization in § 5–401(e) to conduct inspections "at any reasonable time during the night or day". Section 5–403, the more recent and specific provision of the Illinois Vehicle Code, governs any warrantless search conducted henceforth in Illinois. *See generally Inter-Continental Promotions, Inc. v. MacDonald,* 367 F.2d 293, 301 (5th Cir.1966), *cert. denied,* 393 U.S. 834 (1968); *New York, Chicago and St. Louis R.R. v. Brotherhood of Locomotive Firemen and Enginemen,* 358 F.2d 464, 468 (6th Cir. 1966). In attempting to reconcile the old and new provisions, we cannot assess the validity of § 5–401(e) in a vacuum, but only with due regard to the changes brought about by enactment of § 5–403. *Republic Steel Corp. v. Costle,* 581 F.2d 1228, 1232 (6th Cir.1978), *cert. denied,* 440 U.S. 909 (1979).

■ Our obligation is to "decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside." *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110 (1801); *see Thorpe v. Housing Authority,* 393 U.S. 268, 281–83 (1969). We consequently turn to an examination of the warrantless inspection program as it emerges under the newly enacted statute.

## II.

The Illinois legislature has established a detailed scheme for regulating the activities of motor vehicle dealers, automotive parts dealers, scrap processors and others engaged in similar businesses. Central to the scheme is an extensive record-keeping system provided for in the Illinois Vehicle Code:

"§ 5–401. Licensees required to keep records. (a) Every person licensed under Chapter 5 of this Act shall maintain for 3 years, in such form as the Secretary of State may by rule or regulation prescribe, at his principal place of business a record of:

1. Every new or used vehicle, used parts or accessories, body, or engine of or for such vehicle purchased, received, or acquired by him, a description of every said vehicle part or accessory including numbers of or other marks of identification, if any, together with the date and the names and addresses of the person from whom each such vehicle, part or accessory was purchased, received or acquired. In the case of a motor vehicle, such description shall also include the trade name, the name of the maker, type, engine and serial number and vehicle identification number in lieu of the engine and serial number and other distinguishing marks, and whether any numbers thereon have been defaced, destroyed or changed;

2. Every new or used vehicle, body, chassis or engine of or for such motor vehicle sold, exchanged, or disposed of by him, including numbers of or other marks of identification, if any, together with the date and the names and addresses of the persons to whom each vehicle was sold, exchanged, or disposed of by him. In the case of motor vehicles, such description shall also include the trade name, the name of the maker, type, engine and serial number and vehicle identification number in lieu of the engine and serial number and other distinguishing marks and whether any numbers thereon have been defaced, destroyed or changed."

Ill.Rev.Stat. ch. 95½, § 5–401 (1981).

Warrantless searches are authorized to enforce the regulatory requirements promulgated by the Secretary of State and thereby "prevent or reduce the transfer or sale of stolen motor vehicles or their parts." § 5–100–1.

Appellees do not challenge the magnitude of the governmental interest served by the record-keeping provisions. Nor do they deny that warrantless inspections will facilitate considerably the state's efforts to control the traffic in stolen automotive parts.

Indeed, warrantless searches appear critical to the state's need for frequent, impromptu inspections. Appellees argue, however, that the inspection scheme, because of the almost unfettered discretion granted to state officials, violates the Fourth Amendment. We therefore turn to a consideration of whether the warrantless searches of the premises of automotive parts dealers, pursuant to the Illinois Vehicle Code as amended effective January 1, 1983, violate the Fourth Amendment's ban against *unreasonable* searches.

■ At the outset, we recognize that warrants are constitutionally required for most administrative searches. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311–13 (1978); *Camara v. Municipal Court,* 387 U.S. 523, 528–33 (1967). For example, the Supreme Court held OSHA's warrantless inspection program invalid in *Marshall v. Barlow's, supra,* reasoning that the statute failed to tailor the scope and frequency of the administrative inspections to the particular health and safety concerns addressed by the statute. 436 U.S. at 316–24. Since OSHA inspectors could "roam at will" throughout any industrial establishment to look for a myriad of health and safety violations, the Court held that their searches constituted unreasonable intrusions into the proprietors' Fourth Amendment rights. Although "probable cause" in the criminal sense was not required to obtain a warrant, requiring review by an independent magistrate would ensure that the object and scope of the search were clearly delineated. *Id.* at 320–21.

■ Despite the Fourth Amendment protection, the warrant requirement is not without exception. *Donovan v. Dewey,* 452 U.S. 594 (1982); *United States v. Biswell,* 406 U.S. 311 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970). As the Court in *Donovan v. Dewey, supra,* recently explained:

"[U]nlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections."

452 U.S. at 598–99 (citations omitted). The businessman's privacy interest must be balanced against the need for the warrantless search: "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camara, supra,* 387 U.S. at 536–37. Since the state's need here for conducting warrantless searches is not disputed, we shall focus upon the nature of the privacy interest affected. The determinative factors to be considered are whether the industry affected is so closely regulated as to provide notice of the prospect of governmental intrusion and whether the statutory scheme enacted "provides an adequate substitute for a warrant in terms of the certainty and regularity of its application." *Donovan, supra,* 452 U.S. at 603. To satisfy the "certainty and regularity" requirement, the inspection program must define clearly what is to be searched, who can be searched, and the frequency of such searches. We hold that the amended statute provides adequate safeguards for the inspection scheme and therefore does not run afoul of the Fourth Amendment. We turn to an analysis of the pertinent factors which have led us to that conclusion.

■ The extent and background of regulation play a pivotal role in determining whether warrantless administrative searches are reasonable under the Fourth Amendment. The Supreme Court in *Colonnade, supra,* held that the "long history of the regulation of the liquor industry" made the warrant requirement inapplicable to

searches authorized to investigate whether liquor bottles had been refilled or altered. 397 U.S. at 75–77. The Court reiterated that principle in *Biswell, supra,* in which it sanctioned warrantless administrative searches of dealers in firearms: "Federal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." 406 U.S. at 315. The *Colonnade-Biswell* exception to the warrant requirement appears to stem from a theory of implied consent—those entering a heavily regulated field do so with the knowledge that their establishments may be subject to warrantless searches.

Recently, in *Donovan, supra,* the Court also emphasized the import of an industry's regulatory past. In upholding a provision of a federal mine safety statute which authorized warrantless inspections, the Court stated that "a warrant may not be constitutionally required when Congress has reasonably demonstrated that warrantless searches are necessary to further a regulatory scheme and the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." 452 U.S. at 600. The pervasiveness of past regulation affects a proprietor's legitimate "expectation of privacy" and that expectation in turn influences the "reasonableness" of the intrusion challenged in the instant case.

It is undisputed that Illinois has long subjected the business of automotive parts and scrap processors to extensive scrutiny. For example, the state has required that used car dealers be licensed since 1930 and that requirement was extended to parts dealers in 1934. Ill.Rev.Stat. ch. 95½, § 5–301 (1981). Record-keeping requirements were imposed on dealers in this field in 1956 and 1957. *Id.* § 5–401. Indeed, Illinois subjects automotive parts dealers to a mandatory investigation for past criminal records, § 5–105, and, as part of the state licensing procedure, each licensee must agree to comply with the stringent record-keeping requirements provided for in § 5–401. The license application form itself states:

"UNDERTAKINGS:

As an inducement to the Secretary of State to issue dealer license the undersigned undertakes to:

A. Maintain for a period of three years, in the form required by the Illinois Motor Vehicle law and the Secretary of State, books and records which shall be open to inspection at any reasonable hour."

Licensees thus are put on notice that they are entering a field subject to extensive state regulation.

 Appellants claim that such a history of comprehensive regulation renders the warrant requirement superfluous. They argue that the *Colonnade-Biswell* line of cases stands for the proposition that no warrant is ever required for searches of industries with a history of pervasive state regulation. We disagree. While it is true that *Colonnade* and *Biswell* appear to turn on a theory of implied consent, 397 U.S. at 75–77; 406 U.S. at 315–16, we think the more apt conclusion is that the degree and extent of past regulation comprise but a part, albeit a substantial part, of a determination of a "reasonable expectation of privacy" under the Fourth Amendment. Otherwise, no protections at all would be appropriate in closely regulated industries. The Fourth Amendment requires that a determination of the "reasonableness" of the intrusion be made. Even in closely regulated industries, the inspection provisions still must be tailored to the state's proper objectives, and they must minimize the dangers inherent in the unbridled exercise of administrative discretion.

The fact of Illinois' long and extensive regulation of the automotive parts industry therefore does not end our inquiry. We must consider whether, in light of the notice stemming from the history of pervasive

regulation, the Illinois Vehicle Code provides sufficient safeguards to obviate the need for the warrant requirement. In other words, we must determine whether appellants have demonstrated on balance that the warrantless inspections authorized by § 5–401 and § 5–403 of the Code permit only *reasonable* incursions into appellees' privacy interests.

The revised Illinois Vehicle Code does limit the discretion of Illinois state officials in several important respects. First, § 5–403 (1) (page 1076, *supra*) delineates specifically what is to be searched, namely, those parts of the business establishment "used by the licensee to store vehicles and parts that are reflected by the required books and records". Thus, unlike the statutory scheme held to be overbroad in *Marshall, supra,* 436 U.S. at 323–24 & nn. 21–22, inspectors under the Illinois statute cannot roam at will throughout the business premises. *United States ex rel. Terraciano v. Montanye,* 493 F.2d 682, 684–85 (2d Cir.1974) (holding permissible warrantless inspections that are "statutorily limited to the business records and goods of industries that are properly subject to intensive regulation in the public interest"). Second, the statute describes how searches are to be conducted, confining them to "any time that business is being conducted", allowing the licensee or a representative to be present, and placing a maximum limit of twenty-four hours upon any search. Those constraints minimize the intrusiveness of the search. *Wayne Consumano, Inc. v. Block,* 692 F.2d 1025, 1028–29 (5th Cir.1982) (approving warrantless searches limited to ordinary business hours). Finally, no more than six inspections of an establishment may be conducted within any six-month period, thus placing another limit on inspectors' discretion which was not present in *Marshall, supra.* While the buffer of an independent magistrate might constrain officials even further, the statutory

scheme here involved narrowly defines what is to be searched, who may be present, how long the search may last, and how often it may take place. In light of the safeguards placed on the inspection, an administrative warrant requirement would add only marginally if at all to the licensee's right of privacy. *Biswell, supra,* 406 U.S. at 316; *Camara, supra,* 387 U.S. at 539.

Despite these safeguards, appellees argue that Illinois' failure to provide overall coordination for the warrantless inspection scheme eviscerates whatever protections are afforded. They claim that, because any law enforcement officer is authorized to conduct a search, the scheme becomes subject to abuse. A policeman on the beat, according to appellees, may inspect an automotive establishment at his or her caprice without proper sensitivity to the limitations prescribed in the statute. Appellees further assert that the lack of a uniform routing and record-keeping system exacerbates the potential for abuse. And, finally, appellees argue that one officer may conduct a search at an establishment that another officer may have searched several days previously.

■ We have carefully considered and weighed in the balance each of appellees' claims. While we do not lightly dismiss the specter of bureaucratic abuses that appellees suggest,[3] we are convinced that such shortcomings do not rise to a constitutional level. The State of Illinois simply does not have the resources to train enough special investigators to carry out searches of all licensees in the field. Police officers must abide by the same restrictions applicable to specially trained investigators. Furthermore, the lack of a comprehensive record-keeping system in itself does not injure appellees. They can claim no cognizable interest in the state's method of processing the information it has collected. Indeed, imposing a warrant requirement would not

---

**3.** Several automotive parts dealers testified at hearings before the district court about abuses perpetrated by the state officials conducting searches of their establishments. That the statutory scheme may be abused is not sufficient to cast doubt upon its constitutionality.

Appellees admit in their brief that they have not alleged that state officials have engaged in a pattern of illegal conduct. Moreover, the abuses in question occurred prior to amendment of the statute.

rid the statutory scheme of these alleged defects. This is not to suggest that abuses are not possible under the statute—only that such abuses are not endemic to the legislative scheme.[4]

Under the carefully drawn provisions of the statute, the state's objective of deterring automobile theft through warrantless searches outweighs the licensees' right to privacy. We therefore hold that the warrantless inspections authorized by statute do not contravene appellees' Fourth Amendment rights.[5]

### III.

This brings us to appellees' claim that the state's record-keeping requirement may force proprietors of automotive parts establishments to incriminate themselves in violation of their Fifth Amendment privilege.

Administrative rules promulgated to aid enforcement of § 5–401 prescribe what records must be kept by the automotive parts dealers. The provision held unconstitutional by the district court below, ¶ 1G of Administrative Rule 5–401A, reads:

"1. Upon the Purchase, Receipt or Acquisition of Vehicles, Parts, Bodies or Engines, the following information must be recorded.

 . . . .

G. Whether any serial number or other identifying mark of the manufacturer or Secretary of State has been altered, defaced or removed."

One companion criminal statute, § 4–102(a)(4), provides that it is a misdemeanor for:

"A person to buy, receive, possess, sell or dispose of a vehicle or any component part of a vehicle if the manufacturer's identification number thereon has been removed or falsified, and such person has no knowledge that the number is removed or falsified. . . ."

Another criminal statute, § 4–103(a)(4), provides that it is a felony for:

"A person to buy, receive, possess, sell or dispose of a vehicle, or any component thereof, with knowledge that the identification number of the vehicle or any component part thereof having an identification number has been removed or falsified."

Any licensee therefore who complies with the record-keeping requirement and represents that a serial number has been altered becomes subject to prosecution under the relevant criminal statute. The district court held that the record-keeping requirement infringed the licensees' Fifth Amendment privilege against self-incrimination.[6] We agree as to some licensees. We note that appellees fall into three categories: sole proprietorship, partnership and corporation. The distinction is crucial, because the Fifth Amendment privilege does not extend to all categories, nor is the application within any one category necessarily always uniform.

---

4. If abuses do occur, relief may be sought otherwise on a case-by-case basis.

5. The district court also invalidated ¶ 5 of Rule 5–401A which reads as follows:
"Separate records for each vehicle or part shall be kept. Such records shall be clearly legible and open for inspection at any reasonable time by any authorized representative of the Secretary of State or any peace officer. The Secretary of State may prescribe forms for the maintenance of such records."
Although the court did not explain why it invalidated this paragraph, presumably it did so because it tracked the language of § 5–401(e). Since we hold that new § 5–403 constrains § 5–401(e) sufficiently to obviate a finding of

unconstitutionality, we also conclude that ¶ 5, read with the gloss of § 5–403, is valid.

6. The district court limited its discussion of ¶ 1G to the danger that dealers could be exposed to prosecution for a misdemeanor even if they *did not know* of illegal conduct on the part of third parties under § 4–102(a)(4). 518 F.Supp. 582, 587 (N.D.Ill.1981) (opinion issued upon entry of preliminary injunction). Lack of knowledge, however, has little bearing on ¶ 1G since dealers can only record that a serial number has been defaced when they *know* of that occurrence. The vulnerability of ¶ 1G rather is that it forces dealers to provide evidence of their own complicity by recording when they know that serial numbers have been altered or defaced.

 As to a sole proprietorship, we start with the premise that some governmentally-required records have long been held immune from the Fifth Amendment privilege against self-incrimination. *Wilson v. United States,* 221 U.S. 361 (1911); *United States v. Shapiro,* 335 U.S. 1 (1948). As the Court explained in *Wilson:*

> "[T]he physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege.... The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained."

221 U.S. at 380. Applying that principle, the Court has developed three criteria for determining whether a particular record is a "required" record and thus subject to disclosure without infringing the custodian's Fifth Amendment privilege: (1) the purpose of the record-keeping requirement must be essentially regulatory; (2) the records must be of the type customarily kept; and (3) the records must have assumed a public character. *Grosso v. United States,* 390 U.S. 62, 67–68 (1968); *United States v. Rosenberg,* 515 F.2d 190, 199–200 (9th Cir. 1975). Although the contours of these criteria have remained amorphous, *e.g., Marchetti v. United States,* 390 U.S. 39, 56–57 (1968); *United States v. Dichne,* 612 F.2d 632, 639–41 (2d Cir.1979), *cert. denied,* 445 U.S. 928 (1980), the critical elements appear to be the degree to which the information requested in and of itself is incriminatory and the degree to which those required to keep the records are suspected of criminal

activity. If the requirement is targeted at a group highly suspected of criminal activity, then there is a greater chance that the purpose of the record-keeping requirement is related to the illumination of criminal activity, that the records are not of the type that would be customarily kept, and that the records have not assumed a public character. We therefore must determine whether the record-keeping requirement here fails to satisfy the three conditions and more generally whether it is directly incriminatory and targeted at those suspected of criminal behavior.

Although there is a fine line between a regulatory purpose and the specific effort to root out criminal activity, we are hard pressed to articulate a regulatory rationale for the record-keeping requirement in question. For instance, in *United States v. Rosenberg, supra,* the Ninth Circuit held that the state could require a physician to produce prescription records he was required to keep by law. While part of the purpose of that statute was to restrict the traffic in controlled substances, the state also demonstrated a strong regulatory interest in monitoring the flow of potentially harmful drugs for general health and welfare reasons. Similarly, in *California v. Byers,* 402 U.S. 427 (1971), the Court concluded that requiring drivers of motor vehicles involved in accidents to stop and give their names and addresses fell within the required records exception. The state had an interest in facilitating financial responsibility for accidents independent of its desire to identify drivers who had violated provisions of the motor vehicle law. *Id.* at 431–33; *cf. United States v. Sullivan,* 274 U.S. 259 (1927) (government's purpose in collecting taxes from gamblers is predominantly financial). In contrast, the purpose in the instant case in requiring a licensee to record whether a serial number has been defaced can only be viewed as related to the detection of criminal wrongdoing. As appellants contend, the requirement also may be helpful in prosecuting criminal violations by third parties, but that similarly reflects the

state's desire to ferret out criminal activities.

Furthermore, we doubt whether the record-keeping requirement in question satisfies the other two prongs of the test referred to above. Automotive parts dealers or scrap processors probably would not record whether a serial number had been defaced in the absence of state regulation. Recording that information would not facilitate their normal business activity. While the public aspect criterion defies easy analysis, the information in question does not appear to have entered into the public domain. As the Court explained in *Grosso v. United States, supra,* even if the information sought by the state were of general public interest, "we cannot ignore either the characteristic of the activities about which information is sought, or the composition of the group to which the inquiries are made." 390 U.S. at 68. The information required by ¶ 1G to be recorded admittedly is directed at stopping alleged "chop shop" activities, Illinois Vehicle Code § 5–100–5, and therefore cannot be said to have the requisite public aspect needed to come within the required records exception.

The determinative factor in our view is that the requirement in question is both directly incriminatory and aimed at a select group suspected of criminal activities. Recording that a serial number has been defaced or altered, without more, subjects the automotive parts proprietor to criminal penalties. Moreover, the Illinois legislature specifically has determined that there is a high incidence of criminal activity among automotive parts dealers, scrap processors, and wreckers. Illinois Vehicle Code § 5–100–1. The record-keeping requirement therefore is similar to those invalidated in *Grosso* and *Marchetti* which not only were targeted at gamblers, a group suspected of criminal activities, but, if obeyed, could immediately subject the gambling taxpayers to criminal prosecution. *Grosso, supra,* 390 U.S. at 64–68; *Marchetti, supra,* 390 U.S. at 54–57; *Haynes v. United States,* 390 U.S. 85, 98–99 (1968) (record-keeping requirement which was invalidated was targeted at owners of certain unregistered firearms who were suspected of obtaining the firearms unlawfully). In contrast to the records required in the instant case, the wage-price data in *Shapiro, supra,* were applicable to a wide spectrum of employers, 335 U.S. at 8–12, and the information required in *Byers, supra,* was not incriminatory in and of itself. 402 U.S. at 430–31.

We hold that the record-keeping requirement of ¶ 1G of Rule 5–401A violates the Fifth Amendment privilege against self-incrimination as to those appellees who are sole proprietors.

With respect to the appellees that are partnerships, the Supreme Court's decision in *Bellis v. United States,* 417 U.S. 85 (1974), provides the analysis. We infer from *Bellis* that a partner has the same Fifth Amendment privilege as does a sole proprietor only if the partnership of which he is a member lacks a formal association and does not have an "established institutional identity independent of its individual partners." In order to resolve this wholly factual question with respect to the partnerships in this case, we remand the case to the district court for a determination consonant with the principles of *Bellis* and its progeny. *See, e.g., United States v. Alderson,* 646 F.2d 421 (9th Cir.1981).

With respect to the appellees that are corporations, we reiterate the longstanding rule that the Fifth Amendment privilege is a personal one which does not extend to corporations or their agents. *Wilson v. United States,* 221 U.S. 361 (1911); *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327 (3d Cir.1982). Accordingly, we vacate the judgment of the district court to the extent it held the privilege available to the corporate appellees.

Accordingly, with respect to the record-keeping requirement of ¶ 1G of Rule 5–401A, we affirm so much of the district court's injunction and award of declaratory relief as pertains to the sole proprietor appellees; we vacate the injunction and award of declaratory relief as it pertains to the corporate appellees; and we remand the

case to the district court to fashion appropriate relief with respect to the partnership appellees. We also vacate the district court's injunction and award of declaratory relief with respect to the warrantless search provisions of § 5–401(e) of the Illinois Vehicle Code and ¶ 5 of Administrative Rule 5–401A.

AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART.