George BROWER, Debra Campbell, Blanca Sota McMillan, Maria Rodriguez, Maria Gonzales, Inland Property Management, Inc., an Illinois corporation, and American National Bank and Trust Company of Chicago, as Trustee under Trust Agreement No. 56978, Plaintiffs,

v.

VILLAGE OF BOLINGBROOK, a Home Rule municipality, Defendant.

No. 89 C 2052.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1990.

 

Richard J. Troy, William G. Hutul, Law Offices of Richard J. Troy, Chicago, Ill., for plaintiffs.

Stuart D. Gordon, Moss & Bloomberg, Ltd., Bolingbrook, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The plaintiffs challenge the Village of Bolingbrook's ordinance that requires landlords and property managers to consent to and pay for an inspection whenever they rent to new residential tenants and, further, that prospective tenants procure a "Rent/Lease Permit" before they may occupy a dwelling. We have before us Bolingbrook's motion to dismiss. For the following reasons, the motion is denied.

### FACTS

Plaintiff American National Bank and Trust Company (the Bank) holds title to an apartment complex in Bolingbrook that is managed exclusively by plaintiff Inland Property Management, Inc., (Inland). They join with five individual tenants (the tenants) in asserting broadly that the provisions of Bolingbrook's Ordinance 88–44 violate rights under the Constitution and laws of the United States and the constitution and laws of the State of Illinois. In Count I, the tenants assert that the ordinance violates their rights to privacy and equal protection and impinges on their rights to travel and live in a dwelling. They ask that we declare the ordinance unconstitutional and enjoin its enforcement. Inland and the Bank seek the same relief in Count II, where, after repeating the allegations of Count I, they further contend that the ordinance violates their rights to equal protection and to be free of unreasonable searches. Pursuant to the ordinance Inland is collecting $80 from each new tenant to pay Bolingbrook's fee for inspecting each rental unit. In Count III, Inland asks our permission to place these funds in escrow while the lawsuit is pending and return the money to tenants if we determine that the ordinance is invalid.

We cannot discern from the record the full scope and meaning of the challenged ordinance, which is codified as Chapter 27, Article 2, of the Bolingbrook Municipal Code, as we can interpret some provisions only by referring to sections of the Code that the parties have not attached to their pleadings. It is clear, however, that the ordinance makes it illegal to rent any dwelling unit unless two conditions are met. First, the landlord must obtain a "compliance letter" from Bolingbrook's Development Services Department. The landlord may obtain the letter only by notifying Bolingbrook of a "change in occupancy" and then consenting to an administrative search. Bolingbrook officials are forbidden to issue the compliance letter unless the dwelling complies with all sections of "this Chapter," which apparently includes Bolingbrook's entire housing and building code.[1] The compliance letter is good for only 60 days. The ordinance first provided for a $40 fee for each inspection. Bolingbrook later raised the fee to $80 for apartments, while retaining the $40 fee for single family residences.

The second condition restricts landlords by permitting them to rent only to tenants who seek official licenses from the Village of Bolingbrook. Prospective tenants must complete and sign an application for a "Rent/Lease Permit" before landlords may legally rent a residence. The ordinance provides that Bolingbrook will issue the permit "following investigation to insure compliance with the provisions of this Chapter." When issued, the permit includes the following information that the tenants presumably must provide when they apply: the names, ages, relationships, and number of people who will live in the residence. When new members join an existing household, they must add their own personal information to the Rent/Lease Permit.[2] It is not clear whether Bolingbrook also requires a new inspection when a new member joins an existing household, as "change in occupancy" is defined in a section of the Code that is not before us.

Any person who fails to comply with the terms of the ordinance, even by neglect or omission, is subject to a fine of up to $1000 for each offense. Each day that the ordinance is violated constitutes a separate offense.

## DISCUSSION

Bolingbrook has moved to dismiss for failure to state a claim and for lack of standing. As a preliminary matter, we note that discussion of this complaint is complicated by the fact that plaintiffs have lumped all the individual tenants' claims into Count I and all the claims of the Bank and Inland into Count II. With regard to the claims of the tenants, the parties have concentrated their arguments on the issues of standing and justiciability. In moving to dismiss for failure to state a cause of action, Bolingbrook appears to challenge the entire complaint, yet its argument addresses only some of the separate claims. In considering this portion of defendant's motion, we bear in mind that a complaint should be dismissed for failure to state a claim only when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### I. *Standing*

#### A. Tenants' Claims

■ In moving to dismiss the claims of the individual tenants as nonjusticiable, Bolingbrook asserts three related arguments. It first contends that the tenants have failed to allege that they have not complied with the ordinance or that they do not intend to comply in the future. It thus

---

1. The ordinance clearly provides that the letter cannot issue until all violations of "this Chapter" are cured. But the ordinance does not affirmatively provide that Bolingbrook *shall* issue a letter whenever a residence complies with the code.

2. Bolingbrook tenants are not required, however, to register their newborns with the city inspectors. The ordinance provides an exception for minor children born to people in an existing household.

concludes that there is no case or controversy between the tenants and Bolingbrook and that the tenants therefore cannot seek the declaratory judgment and injunction that they request in Count I. Second, Bolingbrook asserts that the tenants are seeking an advisory opinion regarding the ordinance's future applicability to activity that the tenants have not alleged will ever occur. Third, Bolingbrook contends that the tenants' claim is moot because they already rented in Bolingbrook and have not alleged that they intend to move to other units in Bolingbrook nor otherwise alleged that the ordinance will affect them in the future.

We note first that the tenants have not even alleged that they have obtained Rent/Lease Permits or otherwise been subjected to the constraints of the ordinance. They have not asserted that they reside in apartments managed by Inland, nor that they reside in Bolingbrook or intend to move to or within Bolingbrook in the future. When read in isolation, the complaint provides little support for the tenants' bid for standing.

We do not read the complaint in isolation, however, because our file also contains defendant's answer to plaintiffs' motion for a preliminary injunction and a temporary restraining order. There, Bolingbrook states that the individual tenants have complied with the provisions of the challenged ordinance [3] but that Inland has refused to pay the inspection fees. We thus consider the motion to dismiss as though the complaint alleged these additional facts.

As the tenants have been subjected to an ordinance that they assert violates their constitutional and statutory rights, they have alleged injury in fact and would certainly have standing to seek, at a minimum, retrospective relief. When litigants seek redress for past violations of their rights, the controversy is not moot. The tenants would clearly have standing to sue Bolingbrook officials for any monetary damages they allegedly sustained as a result of an unconstitutional ordinance. While the complaint does not seek damages, it does request an analogous form of retrospective relief.

In Count III, Inland asserts that it has been collecting the inspection fees from its tenants but has not paid them to Bolingbrook. Inland seeks this court's permission to hold the inspection fees in escrow until we determine whether the ordinance is valid. Inland regards the fees as money that it will return to the tenants if we declare the ordinance unconstitutional. If this were simply a suit between Inland and Bolingbrook, the tenants would have standing to intervene to protect their stake in the fees that they might recover. Consequently, we believe that the tenants have standing to contest the ordinance and seek the return of their inspection fees.

Bolingbrook asserts that the tenants do not have standing to seek prospective relief because they have not alleged that the ordinance will affect them in the future. Bolingbrook's argument would lose its force if the tenants had simply alleged that they intended to move to another unit within Bolingbrook sometime in the future or intended to add additional members to their household.[4] As the complaint stands now, however, we will not strike the bid for prospective relief at this time.

Once we have determined that the tenants are properly in federal court seeking retrospective relief, we have jurisdiction to determine the factual and legal issues. After determining those issues, we will award whatever relief is appropriate. We do not need to decide at this time whether, in the absence of a claim for retrospective relief, the plaintiffs would have standing to seek declaratory or injunctive relief.

In arguing that the tenants have no standing to seek injunctive relief, Bolingbrook relies on *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). That reliance is misplaced, as the case before us today is dis-

---

**3.** Considering the nature of the challenged ordinance, Bolingbrook is certainly in a position to know the identity of its resident tenants.

**4.** If any of the tenants do intend such a change of position, they should amend their complaint to so allege.

tinguishable. In *Lyons* the plaintiff challenged the Los Angeles Police Department's practice of subduing suspects by applying sometimes-fatal chokeholds. Lyons, who had been the victim of that practice in the past, asked for damages and an injunction. As the litigation wound its way through the courts, the issue of damages became severed from the rest of the litigation, and *Lyons* came to the Supreme Court as a suit seeking only an injunction. Viewing the suit solely as a bid for prospective relief, Lyons's standing depended solely on whether he had alleged a real and immediate threat of sustaining direct injury. *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665. The Court held that Lyons's fear of future harm was too abstract and speculative to constitute the live case or controversy required for standing under Article III. This ruling would not apply to a suit seeking both damages and an injunction, as litigants who seek redress for past injury are engaged in a live controversy and validly invoke the jurisdiction of a federal court. The *Lyons* Court appeared to concede that Article III would be satisfied if the bid for an injunction were combined with a suit for damages. In such a case, the Court noted, plaintiffs could win an injunction only by showing that, without it, they would sustain real and immediate harm. However, plaintiffs are not obligated to make that showing in the initial complaint. 461 U.S. at 111, 103 S.Ct. at 1670.

In this case, the tenants have standing to seek retrospective relief. We have jurisdiction and need not rule out any particular form of relief at this time. As we conclude that there is a live controversy, we reject Bolingbrook's other contentions. The tenants do not seek an advisory opinion; their claims are not moot, nor do they run afoul of the ripeness doctrine.

B. Inland and the Bank.[5]

1. *Unreasonable Searches*

■ Inland has asserted that Bolingbrook's ordinance compels it to submit to unreasonable searches. Bolingbrook contends that as the property manager Inland has no standing to challenge the allegedly unreasonable searches of the apartments. In its brief, Bolingbrook takes the position that only a tenant or property owner would have such standing.

In its amended complaint, Inland added the Bank as a plaintiff. The Bank is a trustee holding title to the apartments Inland manages. Bolingbrook contends that the Bank also lacks standing to contest the allegedly unreasonable searches. In Bolingbrook's view, only the beneficial owners of the property, not the mere holder of legal title, has standing to contest the searches.

■ We find that Inland has standing to assert its right to be free of unreasonable searches. Even without an ownership interest in the premises, Inland has a privacy interest. As the manager of the building, Inland bears some responsibility if the rental units do not comply with Bolingbrook's building and safety code. Inland's privacy interests would certainly be implicated if city inspectors could roam at will through unrented units or into maintenance areas from which the public generally is excluded. We also find that the Bank, as the legal owner of the premises, has standing. *See New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) ("an owner or operator of a business ... has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable").

2. *Standing to Assert Rights of Third Parties*

■ Inland alleges that Bolingbrook enacted at least one section of its ordinance with the purpose of forcing minorities to move out. The complaint states that although the ordinance at first provided for a fee of $40 for each inspection, Bolingbrook later doubled that fee to $80. Inland asserts that Bolingbrook officials increased the fee with the conscious and publicly-an-

---

**5.** Inland amended its original complaint to add the Bank as a plaintiff. In this opinion, our references to Inland will generally include the Bank, except when it is necessary to discuss the two plaintiffs separately.

nounced purpose of forcing Inland to raise rents, thus forcing out existing renters and encouraging the arrival of more "upscale" tenants. Inland asserts that Bolingbrook officials used the word "upscale" to refer to non-minorities.

In moving to dismiss, Bolingbrook states simply that Inland has not alleged that it is itself a member of a minority class. Without that additional allegation, Bolingbrook contends, Inland is improperly attempting to assert the rights of third parties. We disagree. Courts have held that non-minority real estate operators have standing to challenge allegedly racially motivated adverse actions taken by local officials. *See, e.g., Baytree of Inverrary Realty v. City of Lauderhill,* 873 F.2d 1407, 1409 (11th Cir.1989) (citing cases from 1st and 4th circuits).

In arguing that Inland may not assert the rights of third parties, defendant cites *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). We do not believe that case conclusively supports the defendant's argument. In *Warth v. Seldin,* the Supreme Court explained that Article III of the Constitution limits the jurisdiction of the federal courts to litigants who have a case or controversy. A litigant meets this threshold and has standing under Article III by alleging some threatened or actual injury fairly traceable to the defendant's assertedly illegal action. 422 U.S. at 499, 95 S.Ct. at 2205. In this case, Inland has adequately asserted sufficient harm to its own interests to meet the requirements of Article III.

Once litigants clear the constitutional hurdles that limit standing, they must overcome further barriers that federal courts impose out of prudential concerns. The general rule that litigants must assert their own rights and not the rights of non-parties is one of these self-imposed rules of judicial restraint that is not mandated by Article III. This general rule yields to exceptions. *Warth* notes that the Supreme Court has sometimes permitted litigants to argue that a government restriction enforced against them would also indirectly affect the rights of absent third parties.

422 U.S. at 510, 95 S.Ct. at 2211. Indeed, once Inland has satisfied Article III by alleging injury to itself, many of the claims advanced by the tenants in Count I could arguably be raised by Inland itself on their behalf. *See Craig v. Boren,* 429 U.S. 190, 195, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976) ("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function"). The constitutional right of privacy that the tenants argue in Count I developed in cases where the Supreme Court permitted litigants to argue the rights of non-parties. *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird,* 405 U.S. 438, 444–45, 92 S.Ct. 1029, 1033–34, 31 L.Ed.2d 349 (1972). *See also Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). As we find that plaintiffs have standing, we turn now to Bolingbrook's argument that they have failed to state a valid claim for relief.

## II. *Failure to State a Claim*

### A. Tenants' Claims

■ In Count I, the tenants assert that the ordinance violates their right to privacy and equal protection and impinges on their right to travel and to live in a dwelling. Although Bolingbrook moves to dismiss on the ground that plaintiffs have not stated a valid claim for relief, its argument discusses only some of the grounds upon which plaintiffs base their challenge.

Bolingbrook argues only that its ordinance does not violate the tenants' constitutional right of privacy. It contends that United States Supreme Court precedents have countenanced its requirement that tenants provide information about their families. Although some single-family zoning ordinances violate the federal constitutional right of privacy by defining "family" in a way that prevents some relatives from living together, *see Moore v. City of East Cleveland,* 431 U.S. 494, 503–04, 97 S.Ct. 1932, 1937–38, 52 L.Ed.2d 531 (1977) (plurality opinion), Bolingbrook relies on *Vil-*

*lage of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), which upheld zoning ordinances that exclude households composed of more than two unrelated people. Bolingbrook contends that Rent/Lease Permits are designed to ensure that only one family, as defined in the zoning ordinance, may occupy any rental unit. Because the *Belle Terre* opinion stamps its single-family zoning ordinance as constitutional, Bolingbrook argues, it may constitutionally require tenants to provide information that will help enforce that ordinance.

Even if we assume that Bolingbrook's provision for single-family zoning does not violate the right of privacy,[6] Bolingbrook's argument goes too far. Without violating the Constitution, Bolingbrook may also prohibit its citizens from conducting business in city hall while armed with concealed and loaded weapons. Such a constitutional end, however, would not justify any and all ordinances aimed at achieving it. Bolingbrook certainly could not require that all members of the public remove their clothing upon entering city hall and conduct all their business in the nude. Although such a draconian measure would further Bolingbrook's legitimate interest in a gun-free public building, we are reminded that constitutional law incorporates the weary wisdom that the end does not always justify the means.

When asked to decide whether a particular statute or ordinance is a constitutionally valid means of achieving a proper legislative goal, courts apply varying degrees of scrutiny. Generally, courts defer to legislative judgment and uphold regulations that are rationally related to a permissible government purpose. Courts scrutinize legislation more strictly, however, when it impinges on a fundamental right or establishes a "suspect classification." In such a case, courts will uphold regulations only if they are necessary to further an overriding

government interest and are tailored narrowly to achieve that end. In some cases, courts have applied an intermediate test that requires that regulations be substantially related to an important government objective. *See generally* J. Nowak, R. Rotunda & J. Young, Constitutional Law § 14.3 (3d ed.1986). Without determining which standard of review ought to apply, we note that the *Belle Terre* decision upon which Bolingbrook relies upheld a zoning ordinance without discussing the constitutionality of the means used to enforce it. Thus we cannot look to *Belle Terre* to determine whether Bolingbrook's ordinance is a constitutional means for furthering an otherwise legitimate legislative goal.

Furthermore, the tenants' claim that the ordinance violates their rights of privacy, raises additional concerns not covered by the holdings of *Belle Terre* and *Moore*. Those cases traced the boundaries of a zone of personal and family decisionmaking that enjoys a strong degree of insulation from any government regulation. *See Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 772, 106 S.Ct. 2169, 2184, 90 L.Ed.2d 779 (1986). The tenants here also argue that Bolingbrook treads on their interest in avoiding unwarranted disclosure of personal matters, a second interest that the Supreme Court has suggested is arguably protected by the federal constitutional right of privacy. *See Whalen v. Roe*, 429 U.S. 589, 599, 605–606, 97 S.Ct. 869, 876, 879–880, 51 L.Ed.2d 64 (1977). In *Whalen* the Supreme Court suggested that this privacy interest is adequately protected when statutes provide safeguards against disclosure of personal information the government collects. The Court left open the possibility that, without such statutory safeguards, the government's demands for some personal information might violate the Constitution.[7] Bolingbrook has not

---

**6.** Bolingbrook's argument requires that we assume that its ordinance is governed by the holding of *Belle Terre* rather than the holding of *Moore.* Although plaintiffs do not challenge that assumption, we note that the record does not contain the section of Bolingbrook's zoning ordinance that defines the term "family."

**7.** We also note that the tenants claim a right to relief under the constitution and statutes of Illinois. The Illinois Constitution of 1970 prohibits unreasonable invasions of privacy and also provides that individuals shall have a remedy. Ill. Const. art. I §§ 6, 12. Bolingbrook has not

contended that its ordinance adequately protects against disclosure nor has it otherwise argued that the ordinance does not violate the tenants' interests in avoiding unwarranted accumulation and disclosure of information.

While Bolingbrook's requirement that tenants provide information may bear a rational relation to its interest in enforcing its single-family zoning, it is not clear that the Rent/Lease Permits would necessarily survive scrutiny under a less deferential standard of review. With regard to the tenants' claims, the parties have concentrated on the issues of standing and have not focused extensively on the merits of the privacy claim. Without full information on the meaning and operation of the ordinance,[8] and without full briefing on the proper standard of review, we are not prepared to say at this time that the ordinance does not violate the tenants' right of privacy. We therefore deny Bolingbrook's motion to dismiss that claim.

The tenants also contend that the ordinance impinges on their right to travel and their right to live in a dwelling, which they characterize as a fundamental right. They further charge that the ordinance provides no criteria by which Bolingbrook officials are to decide whether tenants who apply for a Rent/Lease Permit will actually receive one. This absence of criteria, the tenants argue, chills the exercise of their rights. The tenants further contend that the ordinance denies them the equal protection of the laws, because only renters, but not homeowners, must apply for permission to live within the Village of Bolingbrook. We offer no opinion on whether these claims state a cause of action, as Bolingbrook has not addressed any of them in its motion to dismiss.

### B. Claims of Inland and the Bank
#### 1. *Equal Protection*

■ Inland has complained that the ordinance denies it the equal protection of the laws. First, Inland asserts, section 27–201 of Bolingbrook's Code prohibits property managers from renting unless 1) a compliance letter has issued and 2) the tenants have a valid Rent/Lease Permit. Property owners, Inland asserts, are not subject to the prohibition of 27–201, thus creating a classification that violates the equal protection clause.

Instead of arguing that this classification is constitutional, Bolingbrook contends that Inland has misread the ordinance and found a classification where none exists. Bolingbrook directs us to section 27–205, which, we agree, does apply to both owners and managers. We do not agree, however, that the content of section 27–205 demonstrates that section 27–201 treats owners and managers alike.

Section 27–205 requires both owners and managers to notify the City of Bolingbrook whenever the occupancy of a rental unit will change. That section, however, does not appear to affect the prohibition in section 27–201, which by its terms applies to managers and not to owners. Reading the sections together, it appears that both owners and managers must report a change of occupancy, but owners do not otherwise violate the ordinance if they rent to tenants who lack the proper credentials.

We thus conclude that section 27–501 does treat owners and managers differently. As Bolingbrook has not argued that this classification is constitutional, we offer no opinion on that subject. Because we reject the argument Bolingbrook advances, we deny its motion to dismiss the equal protection claim.

#### 2. *Unreasonable Searches*

■ Inland and the Bank contend that the ordinance violates the Constitution by forcing them to consent to unreasonable warrantless searches. In moving to dismiss, Bolingbrook contends that the inspec-

addressed any pendent claims under Illinois law.

8. For example, because we do not have the ordinance's definition of "occupancy" or

"change in occupancy," we cannot tell how long tenants may entertain a visitor before being required to add an additional name to the Rent/Lease Permit.

tions meet constitutional standards for warrantless administrative searches of closely regulated commercial enterprises. The parties direct our attention to opinions from other jurisdictions assessing the validity of apartment inspection schemes similar to Bolingbrook's. *See Sokolov v. Village of Freeport,* 52 N.Y.2d 341, 438 N.Y.S.2d 257, 420 N.E.2d 55 (1981) (invalidating warrantless inspections); *Dome Realty, Inc. v. City of Paterson,* 83 N.J. 212, 416 A.2d 334, 349–50 (1980) (upholding warrantless inspections). Bolingbrook argues that the New Jersey opinion adheres more faithfully to the Supreme Court's criteria, as interpreted in this circuit in *Bionic Auto Parts v. Fahner,* 721 F.2d 1072 (7th Cir.1983), for analyzing the Fourth Amendment's operation in pervasively regulated businesses.

The Fourth Amendment condones only searches that are reasonable. When authorities have no warrant, "there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camera v. Municipal Court,* 387 U.S. 523, 536–37, 87 S.Ct. 1727, 1734–35, 18 L.Ed.2d 930 (1967), quoted in *Bionic Auto Parts, supra,* 721 F.2d at 1078. In the *City of Paterson* opinion on which Bolingbrook relies, the government's need for the searches was well established on the record. The preamble to Paterson's ordinance cited a "cycle of deterioration" in local housing that existing enforcement programs could not prevent or cure. The New Jersey Supreme Court approved the City of Paterson's ordinance upon a record that disclosed that one-half of the city's rental units violated the housing code. In contrast, the record in this case does not suggest that an intractable problem of deteriorating housing prompted municipal authorities to adopt drastic enforcement measures. The housing problems that plague older industrial communities in New Jersey do not appear to be prevalent in a newly-built modern suburb like Bolingbrook, Illinois. Because Paterson's ordinance and

the conditions that prompted its drafting are distinguishable, we do not find the decision of the New Jersey Supreme Court to be persuasive.[9]

When analyzing legislation that authorizes searches of commercial property, especially in industries that are already subject to pervasive regulation, the Supreme Court has developed criteria that more specifically direct courts in their attempt to balance the government's need for the search against the intrusion that it would entail. An ordinance that provides for warrantless inspections of commercial property must meet three criteria. First, it must further a "substantial" government interest. Second, the warrantless inspections must be necessary to enforce the government's regulatory program. Third, the inspection program, "in terms of the certainty and regularity of its application," must substitute for a warrant by providing notice that the search is authorized and by confining both the scope of the search and the discretion of the officer. *New York v. Burger,* 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987).

While we suspect that Bolingbrook's ordinance would have no trouble fulfilling the first criterion, the record does not permit a similar conclusion with regard to the second and third elements. Nothing in the record would permit us to conclude that Bolingbrook can enforce its housing code only by inspecting apartments with every change of tenant. Nor does the record before us permit us to conclude that the ordinance also defines with sufficient clarity the subject, scope and frequency of the searches. *See Bionic Auto Parts,* 721 F.2d at 1078 (to satisfy requirement of certainty and regularity, inspection program "must define clearly what is to be searched, who can be searched and the frequency of such searches"). Bolingbrook argues that section 27–201 limits the searches to inspections for building code violations and confines the search to a par-

---

9. We note, too, that Paterson's ordinance did not require that tenants apply for a license or otherwise provide names and other information about their families. Paterson's ordinance is further distinguishable in that it required only a small inspection fee and did not deny an occupancy permit for minor violations of the housing code.

ticular rental unit. We find, however, that the cited section of the ordinance says nothing about building and safety regulations but instead refers, uninformatively, to "all violations of this Chapter or code adopted by this Chapter." The record before us does not contain the portion of the Bolingbrook Code to which this refers, so we cannot say at this time that the scope of the searches is limited to building and safety code violations. Furthermore, in the portions of the ordinance before us, we find no support for defendant's assertion that the inspections are confined to particular rental units. It would seem that in multiunit buildings many violations of the building code could be discovered only by inspection of common areas, perhaps basements, where pipes, furnaces, water heaters and fuse boxes are located. If the inspections extend to these areas, then they are not confined to a particular rental unit. If the inspections do not extend to these areas, then these less-than-complete inspections appear less necessary to furthering Bolingbrook's legitimate interests in enforcing its building and safety code, a factor that also weighs in the analysis of warrantless administrative searches.

We also cannot ascertain the frequency of the searches from the record before us. Section 27–205 provides for an inspection with each "change in occupancy, as defined in this Ordinance." As the section of the ordinance containing that definition is not in the record, we have no basis for determining whether the ordinance adequately informs Inland of the frequency of the searches.[10] At this point in the litigation, we cannot say that Bolingbrook has shown as a matter of law that the ordinance is valid on its face. We therefore deny defendant's motion to dismiss the fourth amendment claims.

III. *Count III*

Bolingbrook's motion to dismiss Count III turns on its success in striking all the claims raised in Counts I and II. As we decline to dismiss those claims, we also

deny Bolingbrook's motion to dismiss Count III.

### CONCLUSION

For the foregoing reasons, Bolingbrook's motion to dismiss is denied.

---

**10.** When new tenants join an existing household, they must add their names to that household's Rent/Lease Permit. The record before